INTERNATIONAL PRODUCTS CORP. (WILLIAM H. MASSON, INC.) *v.* UNITED STATES

No. 5897.— Invoice dated Beverly Yks., England, December 8, 1937.
    Certified December 10, 1937.
    Entered at Baltimore, Md., January 17, 1938.
    Entry No. 3456.

(Decided June 25, 1943)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Daniel I. Auster* and *Dorothy C. Bennett,* special attorneys), for the defendant.

EKWALL, Judge: This is an appeal for reappraisement involving an importation of what is described on the invoice as "785 bags

Powdered Myrabolam Extract 60% shake" exported December 10, 1937, by Richard Hodgson & Sons, Ltd., of Beverly, Yorkshire, England, to the International Products Corporation and entered at the port of Baltimore, Md. The merchandise was invoiced at £19 per ton of 1,016 kilos, c. i. f. Baltimore, and entry was made on the basis of the invoice price less certain nondutiable charges. It was appraised on the basis of foreign value as that value is defined in section 402 (c) of the Tariff Act of 1930, at £21 9s. per ton, less 1 per centum discount, packing included.

In the brief filed on behalf of the plaintiff it is contended that the proper value is the foreign but that such value is £20 6s. 3d. per ton, less 3 per centum discount, packing included, which value it is claimed is based upon the highest of the unrestricted and uncontrolled sales prices prevailing at the time of exportation to customers in countries other than the United Kingdom or the United States.

At the hearing it was agreed that there was no export value for this merchandise. Plaintiff produced the testimony of Mr. Edwin J. Haley, the sales manager of the International Products Corporation at the time of exportation. He testified that the importing corporation paid the invoice price for the goods and there were received in evidence certain exhibits in support of this statement. In view of the fact that the importer, the plaintiff herein, admits that it is the exclusive purchaser from this exporter and is its only representative in this country, and further that the exporter does not freely offer for sale such or similar goods for export to the United States, it is the opinion of the court that this evidence has little bearing upon the question of the dutiable value of this myrabolam extract.

It appears from the evidence that the district around Beverly, East Yorkshire, which is about 9 miles from Hull, was the principal market in England for the sale of powdered myrabolam extract. It further appears that the usual wholesale quantity at the date of exportation was 100 bags or 5 tons and that the major number of "uncontrolled sales" which the English manufacturer made to purchasers in Belgium, Portugal, France, Holland, Sweden, and Norway, were made in that quantity.

On January 1, 1937, the manufacturer of this powdered myrabolam extract joined the British Manufacturers' Association, a body that exists to control and does control and dictate the sales prices and also resale prices of tanning extracts in the United Kingdom. After that date said manufacturer did not make any new sales or new contracts for the sale in the United Kingdom of this extract except at the prices established by this association.

There is evidence of 19 sales made by this manufacturer to buyers outside of the United Kingdom and the United States during the period from October 1, 1937, to January 1, 1938 (exhibit 3). These

sales were freely made and were not controlled by the British Extract Manufacturers' Association, nor did the manufacturer at that time control the resale prices. The highest of these prices appears on a sale of 100 bags or 5 tons, which is the usual wholesale quantity according to the record, which sale is quoted at £21 10s. c. i. f. Bergen, Norway, on November 19, 1937. This price according to the affidavit of Mr. Odey (exhibit 4) is equivalent to £20 6s. 3d. f. o. b. Hull. The discount or commission on these sales ranged from 2 to 5 per centum for cash and a commission was allowed on all of such sales.

It is further shown that during the year 1937 the manufacturer of powdered myrabolam extract made unrestricted sales and deliveries of that merchandise to purchasers in the United Kingdom at lower prices but such sales were under contracts entered into prior to January 1, 1937, at a time when the British Extract Manufacturers' Association exercised no control over prices. This evidence is of no avail so far as plaintiff's contention is concerned, in view of the holding of our appellate court in the case of *White Lamb Finlay, Inc.* v. *United States*, 29 C. C. P. A. (Customs) 199, C. A. D. 192, that the freely offered for sale price at the time of exportation governs rather than the earlier contract sale price.

The Government contends that the record indicates that firms in England other than Richard Hodgson & Sons, Ltd., manufactured powdered myrabolam extract, or such or similar merchandise, and that such firms were not members of the association at the date of exportation of this merchandise; but that the plaintiff has not proved that such firms freely offered such or similar merchandise for sale to all purchasers in the principal market of the country for home consumption in the usual wholesale quantities and in the ordinary course of trade, and if there were such sales, there is no evidence as to such freely offered price. In its reply brief the plaintiff points out that the evidence shows that Richard Hodgson & Sons, Ltd., was the only concern in England which in December 1937, was manufacturing and dealing at wholesale in powdered myrabolam extract and therefore, there could have been no sales or offers for that merchandise by other manufacturers.

It is the opinion of the court that the proper basis of value in this case is the foreign value as that is defined in section 402 (c), *supra*, and that such value is £20 6s. 3d. f. o. b. Hull, packing included, and that from such value a deduction should be allowed as a discount. The only question left for determination is the amount of such discount. The special agent's report (exhibit 1) states that a discount of 1 per centum may be allowed for cash in 30 days. However, it appears that this is a quotation from the rules of the British Manufacturers' Association and that such rules control domestic sales. The only evidence in regard to the proper discount allowable on sales to custom-

ers in Belgium, Portugal, France, Holland, Sweden, and Norway is that contained in plaintiff's exhibits which show that discounts ranging from 2 to 5 per centum were allowed on the 19 uncontrolled sales in the latter part of 1937. Plaintiff claims that the court should find the discount applicable to be either 3 per centum or 3½ per centum. The record shows that the plaintiff herein was allowed a discount of 1 per centum plus an additional discount of 5 per centum. Inasmuch as it seems probable the amount of the discount was based upon quantity, it is the opinion of the court that an average of 3 per centum should be allowed in this case in the absence of proof that a higher discount is applicable.

I therefore find as follows:

The merchandise consists of powdered myrabolam extract 60 per centum shake, imported from England; that the usual wholesale quantity consists of 100 bags (5 tons of 1,016 kilos); that the proper value of said merchandise is £20 6s. 3d. per ton of 1,016 kilos f. o. b. Hull, the location of the principal market, packing included, from which a discount of 3 per centum should be allowed.

Judgment will be rendered accordingly.